```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**JAMES G. TRIBBLE, a personal**
**representative of the Estate**
**of JESSE JOE TRIBBLE, deceased,**

    **Plaintiff**

**v.**                            **CIVIL ACTION NO. 2:05-0331**

**ANDREW J. WHITTAKER, JR.,**
**individually and as**
**Administrator of the Estate**
**of BRANDI L. BRAGG, deceased,**

    **Defendant**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion to remand and award costs, filed May 18, 2005, on which briefing concluded August 29, 2005.

                              I.


Plaintiff filed the complaint initiating this action in the Circuit Court of Putnam County, West Virginia on March 11, 2005, followed by an amended complaint on March 16, 2005. He asserts that defendant Andrew J. Whittaker, Jr., acting <u>in loco parentis</u> or as guardian or parent-in-fact, provided Whittaker's minor granddaughter Brandi Bragg "large sums of money, expensive

automobiles and other personal property[,] and he allowed her to have unfettered access and possession of [a] home" owned by him. (Am. Compl. ¶¶ 7-10.) Plaintiff asserts that Bragg subsequently developed an open and notorious drug habit that included the intravenous use of illegal narcotics. (Am. Comp. ¶ 11.)

According to plaintiff, Bragg shared some such narcotics with Jesse Joe Tribble in the home owned by defendant on September 16, 2004, leading to Tribble's loss of consciousness. (Compl. ¶ 14.) Then, plaintiff alleges, Bragg left the home, knowing that Tribble "was severely intoxicated and ill from the use of illegal drugs." (Compl. ¶ 15.) Tribble's body was found in defendant's home the following day, on September 17, 2004. (Compl. ¶ 16.) Nearly two and one half months later, Bragg died as the result of a drug overdose. (Compl. ¶ 17.) According to the death certificate, Bragg died on December 5, 2004, at 341 Scary Creek Road, Scott Depot, Putnam County, in West Virginia. (Cert. of Death, attached as Exh. 1 to Pl. Mot.) She was 17 years of age, having been born on March 25, 1987. (Id.)

Defendant filed a notice of removal with this court on April 21, 2005, on the ground that at all times relevant to this action Bragg and defendant were residents of Virginia. (Not. of

Rem. at 3.)  Because plaintiff is a West Virginia citizen, defendant says, complete diversity exists, giving this court jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446.  In seeking remand, plaintiff argues that defendant's removal notice is defective on its face because it avers that defendant and decedent are or were residents of Virginia, but fails to allege their citizenship or domicile.  (Pl. Mot. ¶¶ 5-6.)

Plaintiff, in his motion to remand, expounds a number of factors which he argues show that defendant and Bragg were citizens of West Virginia at the relevant time.  Defendant is the registered owner of several parcels of real property located in Putnam County, West Virginia, as evidenced by deeds dated as early as February 1995.  (Pl. Mot. at 4-5, see Exhs. 4-6, 8, 10-12.)  Secretary of State records show that he continues to act as the organizer, president, manager, and/or agent for service of process for several registered companies, many located in St. Albans, West Virginia and many owning several parcels of real property in Putnam County at the time of the filing of this action.  Defendant agreed to accept service of process for these companies and provided addresses at which to receive notice in Scott Depot, West Virginia and in St. Albans, West Virginia.  (Pl. Mot. at 4-5, see Exhs. 7, 9, 13-16, 19.)  Additionally,

3

plaintiff and his wife own a townhouse and lots in Daniels, West Virginia. (Pl. Mot. at 4-5, see Exhs. 17-18.)

Plaintiff also notes that Bragg's certificate of death, signed by the chief medical examiner on December 21, 2004, and for which the informant is identified as Jack Whittaker[1], reflects that she was a resident of West Virginia. (Attached as Exh. 1 to Pl. Mot.) Her residence is shown as 111 Rose Hills Acres, Scott Depot, Putnam County, West Virginia. (Id.)

Defendant was appointed administrator of Bragg's estate by the Putnam County Commission on March 14, 2005, by order of the Deputy Fiduciary Supervisor of Putnam County showing Bragg as a resident of Putnam County and reading in part as follows:

> On personal/written motion of Andrew J. Whittaker Jr.[], and the proper affidavit having been filed Andrew J. Whittaker Jr. Of P.O. Box 33, 320 Deer Run Estates, Rocky Gap, VA, 24366 is by the Commission duly appointed Administrator of the estate of Brandi LaSha'

---

[1] Defendant submitted, as an exhibit to his response to plaintiff's motion to remand, a notice from the company Sprint on which someone has written "Jack Whittaker." (Exh. 9 to Pl. Resp.) It further appears from a number of documents submitted in this case that defendant's middle name is "Jackson." The obituary submitted by plaintiff shows that Brandi Bragg is survived by "her maternal grandparents, Jack and Jewell Ward Whittaker" (Exh. A to Pl. Reply), and an article purportedly about defendant identifies him as "Jack," as well (Exh. B to Pl. Reply). It appears that defendant is commonly known as "Jack Whittaker."

4

> Bragg SS# XXX-XX-8989 who died 12/05/2004 late of said County.
>
> * * *
>
> In the office of the Fiduciary Supervisor o[f] Putnam County, West Virginia, acting on behalf of the Putnam County Commission, in vacation, this 14th day of March, 2005, came Andrew J. Whittaker Jr. Administrator of the Estate of Brandi LaSha' Bragg, SS # XXX-XX-8989, who died intestate on December 5th, a resident of Putnam County.

(Attached as Exh. 2 to Pl. Mot.)

After removal, defendant filed in response to the remand motion an affidavit, dated June 1, 2005, stating that he purchased on September 22, 2004, a residence in Bland County, Virginia, at which he has since resided, and at which Bragg resided with him until the time of her death.  (Attached as Exh. 1 to Def. Resp.)  It is noted that the residence is deeded to defendant and Christina Jo Bush, whose relationship with defendant is not explained, as joint tenants with a right of survivorship.  (Exh. 2 to Def. Resp.)  Ms. Bush also is listed as a joint party with defendant for a bank account opened by defendant in Virginia in August 2004.  (Exh. 8 to Def. Resp.)  Plaintiff argues that defendant remains married to Jewell Whittaker.  (Pl. Reply at 4.)

5

Defendant says that his primary care physicians all are located in Virginia, that he has had a motor vehicle operator's permit issued by the Commonwealth of Virginia since March 10, 2005, and that he has purchased at least three businesses in that state.  (Def. Exh. 1.)  Defendant avers that he was the legal guardian of Bragg, that he "is taking the necessary measures and intend[s] to probate" her estate in Virginia (Def. Exh. 1); and that "there will be no ancillary administration of . . . Bragg's estate in the Circuit Court of Putnam County, West Virginia" (Def. Supp. Resp.).  Bragg's death certificate was amended on June 22, 2005, to show her as a resident of Rocky Gap, Bland County, Virginia, which defendant says was done to "confirm" that Bragg was a resident of Bland County, Virginia when she died.  (Def. Supp. Resp.)  He further relies on Bragg's having sought medical treatment in Virginia on September 23, 2004 (Def. Resp. at 2), but Bragg's patient records of that date from Wythe County Community Hospital show her address as Scott Depot, West Virginia (attached as Exh. 4 to Def. Resp.).

Plaintiff filed a reply memorandum on June 10, 2005, attaching a printout of Bragg's obituary, as it appeared in the Charleston Daily Mail on December 23, 2004, from the Charleston

6

Newspapers Internet site.[2]  (Attached as Exh. A to Pl. Reply.) The obituary reflects that Bragg was a resident of Scott Depot, that she attended Hurricane High School (located in Putnam County, West Virginia) and Summers County High School (located in Summers County, West Virginia), and that she was a member of the Hurricane Church of God.  Listed among her survivors were "maternal grandparents, Jack and Jewell Ward Whittaker of Scott Depot."

In his supplemental reply, filed August 29, 2005, plaintiff refers to an order of the Circuit Court of Raleigh County, West Virginia, under which defendant was sentenced to home incarceration pursuant to W.Va. Code § 61-11B-4 after having pled and been found guilty of driving under the influence. (Attached as Exh. A to Pl. Supp. Reply.)  Though the order is undated, it appears that defendant's sentence was in effect from August 3, 2005, through August 8, 2005.  (Pl. Supp. Reply, Exh. A at 4.)  The order reflects that defendant was residing in

---

[2]  In addition to this obituary, plaintiff also has attached as exhibits a copy of an article about defendant and Bragg appearing in The Washington Post Magazine on January 30, 2005 (attached as Exh. B to Pl. Reply), and a copy of an article appearing in the Pittsburgh Tribune-Review on December 10, 2004 (attached Exh. 3 to Pl. Mot.)  The court affords little weight to these documents inasmuch as they set forth unsworn statements on which plaintiff would have the court rely, but the court notes that defendant has not objected to their use.

Daniels, West Virginia at the time of sentencing, and that he would be allowed to leave his residence to work at his office in Mount Hope, West Virginia. (Id.) Defendant states, however, that he was permitted to serve his period of home confinement at the home of his daughter in Daniels, and that it is her address that is shown on the state court order. (Affidavit of Andrew J. Whittaker, Jr. attached to Def. Second Supp. Resp.)

## II.

Subject to limited exceptions, a defendant may transfer a case from state court to federal court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441(a). Federal district courts have original jurisdiction of actions between citizens of different states in which the "matter in controversy" exceeds the value of $75,000, exclusive of interest and costs. 28 U.S.C.A. § 1332(a). Because the amount in controversy is not in dispute, the court need only determine whether the citizenship requirement is satisfied.

The burden of establishing jurisdiction is on the party asserting it, and he must so show by a preponderance of the

evidence. McNutt v. General Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178, 189 (1936); Roche v. Lincoln Prop. Co., 373 F.3d 610, 616 (4th Cir. 2004). In Roche, a case removed by the defendant from state court on diversity grounds, the Fourth Circuit noted that "[i]f diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal court jurisdiction and the citizenship of each real party in interest must be established by a preponderance of the evidence." That burden here falls on the defendant, who removed the action to this court. Further, "[w]hen jurisdiction is challenged, courts generally do not accept the carte blanche naked allegations of diverse citizenship or bald assertions of jurisdictional facts." Roche, 373 F.3d at 617 (citations omitted).

### III.

Plaintiff's first argument in support of remand is that defendant's notice of removal is defective because defendant stated in his notice that each he and Bragg were "resident[s]" of the Commonwealth of Virginia at all times relevant to this action (See Not. of Rem. ¶ 4), rather than citizens. Notices of removal containing deficient jurisdictional allegations, however, may not be defective if diversity of citizenship actually existed at the

9

time of removal, because the court may allow that "allegations of jurisdiction . . . be amended, upon terms . . ."  28 U.S.C.A. § 1653.  See also Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 n. 3 (2nd Cir. 2000) ("[A]n inadequate pleading does not in itself constitute an actual defect of federal jurisdiction."); Kanter v. Warner-Lambert Co., 265 F.3d 853, 857-858 (9th Cir. 2001); 15 James Wm. Moore et al., Moore's Federal Practice § 102.17 (2005)("Section 1653 allows a party and the court to remedy inadequate jurisdictional allegations, but not, it should be emphasized, to eliminate defective jurisdictional facts.").

The court turns then to the question of whether diversity actually existed at the time of the filing of the complaint and of the removal, such that justice would require that defendant be permitted to amend his notice.  Wright, Miller, & Cooper, 14B Federal Practice and Procedure 3d, Ch. 7 § 3721 "Removal Jurisdiction -- In General" and § 3723 "Cases Based on the Existence of Diversity of Citizenship" ("[T]here is a long line of authority supporting the proposition that when diversity of citizenship is the basis for asserting removal jurisdiction, it must exist not only at the time the original action is filed in state court, but also at the time removal is sought to federal court," likely in order to "prevent a nondiverse defendant from

acquiring a new domicile after the commencement of the state suit and then removing on the basis of the newly acquired diversity of citizenship.").

28 U.S.C.A. § 1332(c)(2) provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." The court first determines of which state Bragg was a domiciliary at the time of her death.

Bragg's certificate of death, until amended over three months after this suit was filed, showed that she resided in West Virginia at the time of her demise. The defendant was listed on the certificate as the informant. The oath signed by defendant at the time he accepted appointment as administrator of her estate – notably, three days after the filing of this lawsuit – reflects Bragg's West Virginia residency. Medical bills which defendant suggests support Bragg's Virginia residency show, in fact, a home address in Scott Depot, West Virginia. Further, of perhaps greater importance relative to her intentions, Bragg's obituary shows that she attended both church and high school in West Virginia. There is no evidence that she had any such

connections in Virginia, and the only possible indication that she lived in Virginia is the statement of defendant, which appears to be contradicted by the evidence.

Defendant argues that, as a minor, Bragg acquired the domicile of defendant, her guardian.  In Ziady v. Curly, 396 F.2d 873 (4th Cir. 1968), a case cited by defendant, the United States Court of Appeals for the Fourth Circuit held that federal common law determines an infant's domicile in a diversity action, and applied the rule set forth the in the Restatement of the Law of the Conflict of Laws (1934 ed.) § 38, which provides that if the infant's father is deceased and no guardian of the minor child's person is appointed, the infant's domicile is the same as that of his mother.  Ziady, 396 F.2d at 874.

Ziady does not require that the court blindly determine that Bragg's domicile was that of defendant.  The infant in that case, Alex Ziady, had resided with his father, the custodial parent, in North Carolina following the divorce of his parents.  Alex relocated to New Jersey to live with his mother and stepfather only after his father died.  The Court of Appeals determined that Alex was domiciled with his mother in New Jersey, where both resided, rather than North Carolina, his deceased father's state of domicile, based on its examination of the

12

"major rationale" behind diversity jurisdiction and the general "accord that one of the principal purposes of diversity jurisdiction was to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen."  Id. at 875 (citations omitted).

In consideration of this "major rationale" behind diversity jurisdiction, the court finds pertinent the view of the United States Court of Appeals for the Eighth Circuit, which has stated:

> The domicile of a minor is generally determined by reference to another person because minors are legally incapable of forming the requisite intent to regard a place as a home; however, it is [the minor's] domicile, not that of his guardians, that determines whether diversity jurisdiction exists.  See C. Wright, A. Miller & E. Cooper, [Federal Practice and Procedure, Jurisdiction] § 3615 [(1975)]. . . . The[] general principles do not require us to adopt an unbending rule that a child . . . can never, under any circumstances, have a domicile other than that of his parents. Indeed it is entirely possible that a child may be shown by the evidence to have adopted such a domicile.

Dunlap v. Buchanan, 741 F.2d 165, 167 (8th Cir. 1984).  This approach seems appropriate here, where Bragg had no apparent

connections to the state of Virginia.  Unlike Alex Ziady, for whom the Court of Appeals found "no suggestion that [he] was not removed to New Jersey bona fidely and with an intention to remain for an indeterminate duration" (Ziady, 396 F.2d at 876), there is no evidence, other than defendant's own assertion, supporting his contention that Bragg was domiciled in any state other than West Virginia.  It appears, rather, that defendant never expressed his consideration that Bragg even resided in Virginia until after the filing of this lawsuit, and well after the death of Bragg.

      Moreover, to the extent that defendant would have the court determine that Bragg was domiciled in that same state as her guardian, without consideration of the many facts to the contrary, no evidence has been presented to the court showing that defendant was, in fact, formally charged with Bragg's care, save for defendant's own affidavit stating, "I was the legal guardian of my grand-daughter, Brandi L. Bragg . . ." (See Exh. 1 to Def. Resp.)  It is not clear what role Bragg's mother, who appears to have been living in West Virginia, played in her daughter's upbringing.  There also is no indication that defendant's wife, Jewell Ward Whittaker (See. Exhs.4, 5, 6 to Pl. Mot.), did not share her husband's responsibilities with regard to Bragg.  It appears that Ms. Whittaker may have remained in

14

West Virginia, where Bragg resided, while defendant possibly relocated to Virginia.

A person's domicile is the state in which a person is living with the intent to remain permanently. <u>Commissioner of Internal Revenue v. Nubar</u>, 185 F.2d 584, 587 (4th Cir. 1950). There is neither evidence that Bragg lived in Virginia, nor that she intended to remain there. It appearing that Bragg's connections with the state of Virginia were insufficient to establish that she was domiciled there, the court determines that, at the time of her death, Bragg was a citizen of West Virginia. Defendant, as administrator of Bragg's estate, must then also be a citizen of West Virginia pursuant to 28 U.S.C.A. § 1332(c)(2). Inasmuch as complete diversity does not exist, the court need not undertake to determine defendant's domicile in his individual capacity.

IV.

Having found that this case should be remanded, the court now turns to Tribble's request for "costs and actual expenses, including attorney fees" pursuant to 28 U.S.C. § 1447(c). Under 28 U.S.C. § 1447(c), a court remanding a case may

"require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has recently held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital, --- U.S. ----, 126 S.Ct. 704, 711 (2005). As the Supreme Court explained, this standard "recognizes the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 711.

The court finds that defendant's belief that he was domiciled in Virginia and that the domicile of his granddaughter, of whom he considered himself to be the guardian, would be determined by his own domicile provided him with an objectively reasonably basis for the removal petition even though his position was not persuasive with the court.

16

V.

For the reasons stated herein, it is ORDERED that plaintiff's motion to remand be, and it hereby is, granted insofar as plaintiff seeks remand to the Circuit Court of Putnam County, West Virginia. It is further ORDERED that plaintiff's motion be, and it hereby is, denied insofar as plaintiff seeks an award of costs.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: May 2, 2006

John T. Copenhaver, Jr.
United States District Judge